CHEHARDY, C.J.
| defendant, Freddy Ordonez, appeals his conviction and sentence for sexual battery. For the reasons that follow, we affirm defendant’s conviction, amend his sentence, affirm the sentence as amended, and remand the matter.
PROCEDURAL HISTORY
On January 22, 2007, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant with one count of sexual battery of a juvenile, a violation of La. R.S. 14:43.1. The State, unable to locate the victim, dismissed the prosecution on February 9, 2009. The State reinstated the prosecution on July 23, 2013, which defendant challenged as a violation of his right to a speedy trial. The district court agreed and quashed the bill of information on January 21, 2014. On the State’s appeal, however, this Court reversed and remanded the matter. See State v. Ordonez, 14-186 (La.App. 5 Cir. 9/24/14), 151 So.3d 94.
Following a two-day jury trial, a six-person jury returned a verdict of guilty as charged on January 22, 2015. Defendant filed a post-verdict judgment of acquittal that the court denied. On April 20, 2015, defendant was sentenced to four years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence, with credit for time served. Defendant was further ordered to serve one year of probation following completion of his four-year sentence, with the condition of undergoing mental health counseling for sexual abuse. On June 30, 2016, defendant moved for an out-of-time appeal, which the district court granted on July 6,2016.
FACTS
In May of 2006, M.K.,[1] the victim in this case, was eleven years old and resided in LaPlace, Louisiana. Like any eleven-year-old girl, M.K. attended |aschool, played sports, listened to music, and hung out with her friends. She especially spent a lot of time with her “best friend,” Stephanie Ordonez, the daughter of defendant. M.K. was at Stephanie’s house every day after school, on the weekends, and spent the night there “all the time.” It was “like [her] second home.”
M.K. testified that on the afternoon of May 17, 2006, while Stephanie was at dance class with her mother, M.K. was studying in Stephanie’s bedroom. Defendant was in the house along with Stephanie’s aunt and Stephanie’s three-yéar-old niece. As M.K. lay on the bed reviewing her note cards, defendant was coming in and out of the room, returning to a computer in the corner. At some point he stopped, stood near M.K., staring, and told her, ‘You have beautiful legs,” He then sat down on the bed next to her and began touching her legs. Without her permission, he moved his hand underneath the skort[2] of her school uniform and touched her vagina with his fingers. M.K. “freaked out,” ran downstairs, and locked herself in the room with the three-year-old. Shortly *476 thereafter, she exited the room and asked for the phone. As defendant handed her the phone, he told her, “Don’t tell anybody because I could get in trouble.” M.K. assured him she wouldn’t and called her mother, who told her that her father was coming to pick her up. Moments later, Stephanie returned home and M.K. told her what had happened. Stephanie, in turn, told her mother, who confronted defendant. Defendant dropped to his knees apologizing to M.K.
When M.K’s father arrived to pick her up, she ran out the door, “bawling” and told her father what had happened. He called the police. A patrol officer responded and transported defendant to the detective bureau, where Lieutenant Freddie Young of the St. John the Baptist Parish Sheriffs Office interviewed him. Before speaking with defendant, Lt. Young spoke with M.K. in the presence of her |sfather. According to Lt. Young, M.K. explained that Stephanie’s mother and Stephanie were at Wal-Mart while she was alone in Stephanie’s bedroom. M.K. recounted to the officer that defendant entered the room, did something on the computer, and then remarked that she had pretty legs, sat down next to her, put his hand under her school uniform, and touched her vagina. M.K. further explained to Lt. Young that she told Stephanie what had happened as soon as she returned home and that Stephanie told her mom, who confronted defendant. She stated that defendant got on his knees, apologized, and begged her not to tell anyone.
Lieutenant Young then interviewed defendant, who was advised of his Miranda[3] rights and agreed to answer questions. According to Lt. Young, defendant explained that he was in Stephanie’s bedroom trying to use the computer when he noticed that the room was warm and that M.K’s forehead was red. He touched her forehead, touched her leg, turned on the fan, and left the room.
Stephanie, her mother, and her aunt all testified at trial that the air conditioning did not work properly and that the house, especially upstairs, was often uncomfortably warm. They all stated that it was hot in the house on the afternoon of May 17, 2006.
Stephanie testified that when she arrived back home with her mother from dance class and Wal-Mart that afternoon, she found M.K. playing with her niece and joined them. Initially, M.K, was not crying, but after about ten minutes, Stephanie noticed M.K. tearing up. M.K. told Stephanie that defendant had tried to touch her thighs, which caused Stephanie to cry and tell her mother.
Similarly, Norvia Ordonez, Stephanie’s mother, testified that on the afternoon of May 17, 2006, she left home to pick up Stephanie from dance school and to stop at Wal-Mart. She returned approximately twenty or thirty minutes later to find M.K. playing with Ms. Ordonez’s three-year-old granddaughter. Ms. UOrdonez did not observe M.K. to be upset or crying. A short time later, however, both Stephanie and M.K. came to her crying. Stephanie relayed what M.K. had told her, prompting Ms. Ordonez to become “hysterical” and confront defendant.
On the other hand, Stephanie’s aunt, Lydia Valasquez, testified that she did not see M.K. crying at any point that day. Ms. Valasquez recounted that she went into Stephanie’s bedroom that afternoon, M.K. was on the bed, it was hot, and defendant was reaching up to the ceiling fan. M.K. then went downstairs to play with the *477 three-year-old. M.K. seemed normal to Ms. Valasquez.
Defendant took the stand and testified in his defense. He explained that when he arrived home on the afternoon of May 17, 2006, his sister-in-law, his granddaughter, and M.K. were in the house. His wife had just left to pick up Stephanie. He checked his mail, and had received a bill that he intended to pay online. He wanted to print the receipt so he went upstairs to use the printer in Stephanie’s bedroom. M.K. was on the bed. While trying to get the printer to work, defendant noticed that M.K. was “very, very red” and that the room was “very hot.” Defendant touched M.K.’s forehead and her knee and told her, “You have pretty red legs.” He stood on the bed to turn on the ceiling fan and was stepping down when his sister-in-law came into the room. He left the room and proceeded downstairs. Soon thereafter his wife and daughter returned home. He then heard his wife screaming and was confronted with the allegation that he had inappropriately touched M.K. He denied it.
In rebuttal, M.K. testified that that she did not feel hot that day and that defendant did not touch her forehead or her knee to check her temperature.
DISCUSSION
In defendant’s sole assignment of error on appeal, he argues that the evidence was insufficient to support his conviction of sexual battery.
| ¿¡Sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 17, writ denied, 11-282 (La. 6/17/11), 63 So.3d 1039. Here, defendant filed a motion for post-verdict judgment of acquittal in which he argued the evidence was insufficient to support the guilty verdict. The district court denied this motion. Accordingly, this assignment of error is properly before us on appeal.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11), 52 So.3d 885.
This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational Rtrier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the *478 credibility of witnesses or re-weigh the evidence. Caffrey, supra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ, denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09), 999 So.2d 745. Moreover, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. State v. Bruce, 14-877 (La.App. 5 Cir. 3/25/15), 169 So.3d 671, 675, writ denied, 15-833 (La. 3/4/16), 187 So.3d 1007.
In the instant case, defendant was charged with and convicted of sexual battery. At the time of the offense in May 2006, La. R.S. 14:43.1 defined sexual battery, in pertinent part, as:
A... .the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender[.]
M.K. testified that she was eleven years old on May 17, 2006 and the record reflects defendant’s date of birth is May 30, 1959, making him 46 years old at the 17time of the offense. M.K. testified that defendant touched her vagina with his fingers on May 17, 2006.
Defendant argues that M.K.’s testimony was insufficient to support his conviction because it was uncorroborated, was contradicted by other testimonial evidence, and was internally inconsistent. We are not persuaded by this argument.
First, the testimony of a victim need not be corroborated to support a conviction. Indeed, it is well-settled that a victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Bruce, supra. Second, testimony need not be uncontradicted to support a conviction. The resolution of conflicting or contradictory testimony is one of the fundamental tasks for the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See Bailey, supra. And third, the alleged inconsistencies in M.K.’s version of events do not render her testimony insufficient to support defendant’s conviction.
Defendant contends that M.K.’s version of events is inconsistent with the evidence that: (1) defendant allowed M.K. to use the phone to contact her mother after the incident, (2) an adult female (ie., Lydia Yalasquez) was present in the residence at the time of the incident, (3) defendant was aware M.K.’s parents would soon arrive to pick her up, and (4) defendant was aware his wife and daughter would soon arrive home.
These four points are not irreconcilably inconsistent with M.K’s testimony that defendant touched her vagina. They may be reasons to doubt her version of events, and *479 so bear upon her credibility. But the jury made its credibility determination when it returned a guilty verdict, evidently finding M.K.’s version more credible than defendant’s. And this Court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, supra. Accordingly, we conclude) s that M.K’s testimony that defendant touched her vagina with his fingers was sufficient tó convince a rational trier of fact beyond a reasonable doubt that defendant was guilty of sexual battery. See State v. Gonzalez, 15-26 (La.App. 5 Cir. 8/25/15), 173 So.3d 1227, 1233, writ denied, 15-1771 (La. 9/23/16), 2016 La. LEXIS 1955 (finding the victim’s testimony that the defendant touched her vagina with his fingers was sufficient to support the defendant’s sexual battery conviction); State v. Perkins, 11-162 (La.App. 5 Cir. 12/28/11), 83 So.3d 250, 257 (same).
This assignment of error is without merit. -
ERRORS PATENT
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). Upon review, we find a portion of defendant’s sentence is illegal.
Under the law in éffect' at the time of the offense, a person convicted of sexual battery was not eligible for probation: La. R.S. 14:43.1 imposed a penalty of “imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years.” (Emphasis added). Accordingly, defendant’s one year of probation following completion of his four-year sentence at hard labor is illegal.
, Pursuant to our authority in La. C.Cr.P. art. 882(A),[4] we amend defendant’s sentence to delete this one year of probation. In all other respects, we affirm defendant’s sentence. We remand the case for the district court to amend the commitment to correctly reflect the sentence as amended and affirmed herein. Furthermore,, the Clerk of Court for the 40th Judicial District Court is ordered to transmit the original of the amended commitment to the officer in charge of theR institution to which defendant has been sentenced and to the Department of Corrections’ Legal Department. See State v. Long, 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.
DECREE
For the foregoing reasons, defendant’s conviction is affirmed. Defendant’s sentence is amended and affirmed as, amended. The case is remanded for the district court to amend the commitment to correctly reflect the sentence as amended and affirmed herein.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED

. The victim’s initials, as well as the initials of the victim’s family members, are used under the authority of La. R.S. 46:1844(W)(3) to conceal the identity of a crime victim who is a minor or a victim of a sex offense.

. M.K. explained that a skort is a pair of shorts that resembles a skirt.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. La. C.Cr.P. art. 882(A) provides: “An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.”